Today is 2014-11300 Innova Hospital San Antonio v. Blue Cross & Blue Shield of Georgia. May it please the court. In the Iqbal case, the Supreme Court said that determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The district court here joined a group of other district courts that have embraced an inappropriate, bright-lined rule that a health care provider seeking relief under ERISA Section 502A must not only identify the planned provisions that were breached, but the specific terms of those provisions. We believe this is inappropriate under Iqbal because it is not context-specific and not born of experience and common sense. It does not account for the practical realities of health care claims processing, specifically the imbalance of access to information at the level of detail the district court was requiring. Well, the detail is not the whole policy, the whole plan. It's the specific thing that you are arguing about. I understand not nearly as well as you do the complexities of getting the information, but you need to show that the plan has been breached. And unless you know that it's some contract rate, some discounted rate, some usual charge, you really don't have a claim. So, I mean, he was requiring that for each of the claims, but in most cases that would be a requirement. Why does the complexity of this make the rule different? Well, the complexity of it doesn't make the rule different. What makes it different is that we alleged generally that these plans follow a pattern of providing for recovery of an allowable amount, which is based on either RMC, reasonable and customary, or UCR, usual, customary, and reasonable, and that there was gross underpayment under those standards that we build at usual, customary, and reasonable. And were grossly underpaid under that standard. And what would you say your complaint showed was the basis for that belief, belief that that's what most policies had in it? It did not specifically allege the basis for that belief. I would point out to the court that we are a hospital, that hospitals are in the business not only of hopefully curing patients, but also filing insurance claims, and that as a hospital we can be expected to be familiar with what the typical health insurance plan calls for and what reimbursement is available. So that wasn't specifically set out in the complaint, but I think that's a reasonable inference from our status as a hospital. I thought there was evidence, allegations at least, that a fair number of plans would have a contract rate, a discount rate, that it wouldn't be usual and customary. It turned out in the third amended complaint that that was true as to some of the plans specifically that we had obtained through discovery. But at the time of the second amended complaint, the allegation was that the typical plan provision was an allowable amount based on R&C or UCR. So am I correct, though, that the complaint says that many of the same coverage and payment provisions are used across different plans and that the defendants must pay out-of-network providers some version of reasonable and customary amount, that a representative example of plan terms require an 80 percent reasonable and customary, and that this defendant reimbursed the plaintiffs here at an average rate of 11 percent? Did the complaint set all of that? It set all of that. In fact, it also said that the typical provision is for an allowable amount, which in the case of an out-of-network provider is UCR or R&C. So not just here's a representative example, but a generic description. This is typical of the industry, and we know the industry because we're in this business. Well, we didn't specifically say that last, but I think that's a reasonable inference from the complaint. Health care providers are dependent on their patients for health plan information. They typically only have the information on the patient's insurance card and whatever intake form the provider requires. What did you do to ñ where is the motion to compel that was denied? Why wasn't there discovery litigation? In retrospect, we should have done that, Your Honor. But I think there's every reason to believe, given the judge's rulings, that we had to have adequate pleadings before we conducted discovery that the court would have stayed discovery. Certainly the defendants sought to stay discovery. That was never pressed forward to a ruling, and to be fair, neither did we press for a ruling compelling information. Right. I mean, you could say this information is uniquely in the hands of the defendants. We cannot plead this except on information and belief and in industry averages. And if you require that, then, Your Honor, you have to let us ñ you have to compel these. We've tried for two or four years to get this. That should have been presented formally before the dismissal, shouldn't it have? That was presented in response to the motions to dismiss. It was not presented in the context of a motion to compel discovery. But given the fact that the trial court refused to allow the filing of the third amended complaint and his principal reason for it was that that complaint was tainted because it was the product of discovery and contained information that needed to be in our possession before discovery, if he had allowed the discovery, if he were following true to the logic that he used in his last order, he would have dismissed the second amended complaint anyway, on the ground that it represented the product of discovery and that that was not a permissible approach. What you end up with, Judge, is some fairly standard law that you can't bring a lawsuit in order to find out if you have a lawsuit through discovery, plenty of cases that deal with concepts like that. You're saying this is a special category of case. You argued information and belief, maybe not in your first complaint, I don't remember, but ultimately you say that's the source of this. Where should we look for comparable kinds of rulings that would support you? What kind of cases have allowed because of whatever, complexity is a word I'll use for it, allow you to sort of say this is what we think, but before you throw us out of court, let us have discovery? Well, there's a subtle distinction here. A complaint that is inadequate cannot be excused on the ground that discovery is needed. But the adequacy of the complaint can and should and must be measured according to what, in part, according to what information is available. That's the Eighth Circuit case, the Braden case, that in ERISA you take into account the imbalance of information and to require excessive specificity is effectively to throw the plaintiff out of court because the nature of ERISA is that the plan or the insurer has the information and the beneficiary or here the beneficiary's assignee does not. Even in that context, you're basically saying we think something's wrong based on our sort of big picture knowledge, but we don't know for sure, which seems to be what the Eighth Circuit was allowing in Braden. Maybe that's the right thing to do. Well, we don't know for sure, but we have a pretty strong clue in the fact that reimbursement was at 11% of UCR. That's a very cogent pleaded fact, and that makes it plausible that the defendants are not reimbursing at UCR. We have the allegation in the complaint that we called them up and they assured us that the services were covered. Now, we ultimately did not pursue our claim for negligent misrepresentation, but the fact that the insurer is telling us that the claim is covered certainly makes it plausible that the claim is covered, and we have alleged, based on our experience, that it's covered at a fraction, be it 50, 60, 80% of UCR, and yet we're getting 11%. That cluster of circumstances makes it plausible that the defendants are not reimbursing in accordance with the provisions of their respective plans that require reimbursement for out-of-network providers at RNC or UCR rates. You asked me about the body of case law. If you look at the cases cited in the Rule 28J letters, one of the things you will find is that in the aftermath of this Court's 2015 Electro-STEM opinion, that you have cases starting to go both ways, and I won't represent to the Court that that was a watershed and all the cases since then now go our way, but I will represent to the Court that since that time, courts have been saying, district courts, if it was good enough in Electro-STEM, it's good enough here. Judge Elrod is probably the expert on that panel, from being on that panel, but let me ask you something about the opinion. Tell me how it compares, because it's not the same terminology. What Judge O'Connor was insisting on here is each individual what? Policy, plan, what's the right word? From each individual claimant. Each individual plan. Well, the payment provision. Each patient who is assigned the claim to the hospital would have had a what? A plan? A plan, yes. Okay. Well, what Electro-STEM refers to, and there was only one of them, Electro-STEM alleged the existence and validity of the provider agreement and attached a copy, and the opinion again goes on to say that that's enough to show the basis of the plan. So how does the provider agreement, of which there was only one, and that was enough in Electro-STEM, differ from what Judge O'Connor wanted in this case? Electro-STEM was an in-network case where you have a provider agreement between the plan or the insurer and the provider. The significance of Electro-STEM was you did not have a claim-by-claim allegation about why it was that it was covered under the particular terms. The provider agreement. If you don't have a plan agreement, what would be covered for everybody who is a plaintiff against Electro-STEM? Right. The provider agreement said we will pay for covered services. Well, that begs the question of what is a covered service. The Electro-STEM plaintiff did not allege plan-by-plan that there was coverage, and yet that was held to be okay. It's not a precedential decision. Can you tell from the provider agreement whether each of the claims, you would have the same issue if Judge O'Connor is right? You would have the same issue once you got past the provider agreement and then started to look at which claims were covered claims, which, as I said here, we allege that in each instance the defendants told us that they were covered claims. But that begs the question of the amount of coverage. Well, let me ask if Judge O'Connor was right in this case. Is Electro-STEM too undemanding? Should that have been demanded in Electro-STEM also if the approach that the district judge took in this case is correct? Well, there are three different Electro-STEM opinions, and I'm referring to the middle one, the Fifth Circuit opinion. I shouldn't have presumed, but that's the one I was talking about in 2015. It's the opinion. Electro-STEM is not dispositive of this case, but I think it suggests that if Electro-STEM identified the appropriate level of specificity, then Judge O'Connor erred in requiring a greater level of specificity. I think it supports that conclusion, albeit not directly. So, and since Electro-STEM, two courts in the northern district have followed Electro-STEM to say that the pleading requirements are not astringent. Isn't that correct? That is correct, Your Honor. To be fair, my opponent has filed its own 28-J letter that has some opinions following the ANOVA opinion, including opinions that post-date Electro-STEM. So I'm not going to tell the court that the tide has turned. And two, Judge O'Connor did not have the benefit of Electro-STEM. That is correct. This case has been on appeal since 2014. It's been under bankruptcy stay most of that time. So do I understand your arguments to be maybe threefold, that it's not required to state the plan language? And second, that what is stated is adequate. Yes. As it is. And if you want, I guess I should do, what is stated is what is adequate. It's not required to state the plan language. And if you do require the plan language, it's not appropriate to do so in a case where that information is exclusively in the control of the other party. That is all correct. And then on rebuttal, I'll add a fourth one, which is if you're going to dismiss the second amended complaint, then you should grant leave to file the third amended once the information becomes available. But I'll address that in rebuttal. Thank you. May it please the Court, Counsel, my name is Brian Cavanaugh. I represent Healthcare Service Corporation, one of the defendants below. There are two topics I'd like to address this afternoon with my time. First, I'd like to explain why the district court did not err when it dismissed the breach of fiduciary duty counts in the second amended complaint with prejudice following the Supreme Court's precedent in the Verity and Amara decisions. And second, I'd like to explain why the district court was correct to not credit plaintiffs' information and belief allegations regarding the content of ERISA plans and contracts. Did the court actually, I mean, were they making information and belief, though? They're doing more than just making information and belief. They're giving a lot of information. I don't believe so, Your Honor. I believe that at its core in the second amended complaint and in the complaints that preceded it, all of the allegations relating to the content of the 863 potential health care plans that they were suing on were on information and belief. INOVA conceded that in the court below that it did not know what the plans actually provided. And in fact, in its opening brief on this appeal at page 23, it actually summed up the issue in a way that we would agree with in terms of at least framing the issue. INOVA writes that it had alleged that the reimbursements paid by the defendants were so low that they cannot be reconciled with industry practice for reimbursing out-of-network benefits. If that fact, essentially that the reimbursements were inadequate under any industry commonly accepted plan structure, is true, then INOVA could plausibly prevail. That is all that's required by ICPA. It was central to their theory that as long as they pled that under industry practice, and there's no facts in the complaint to support that industry practice, but under industry practice that it was common for some health plans, for some employer-sponsored groups to reimburse at UCR. And therefore, they were sufficient in their allegations in the second amended complaint in assuming that all of the plans applicable to these 16 different defendants and these 863 different claims were all uniform and uniformly required UCR. Why didn't your client produce these documents either two years before the litigation began or two years into the litigation? I don't think, first of all, speaking for my client, I don't think it was obligated to produce those documents. It did ultimately. Was there a government request requesting these documents? My client ultimately did produce the documents in connection with the counts that were allowed to go forward, which were misrepresentation, negligent misrepresentation, and their claim for penalties under 1132C. So your client's documents have all been produced as you stand here today? I can't sit here this many years. With regard to the plan language? With regard to the plans and the claims that proceeded by the time of close of discovery, yes, it complied with the discovery. Is somebody else here who still haven't been produced? I don't know that, Your Honor. Well, but the problem is that by the time you were producing it had been so narrowed, but you and not just your clients but all the clients were withholding the evidence and then telling the court, well, they haven't pled enough. I don't think that's accurate, Your Honor. Inova's allegations are based on the red herring that the only access to plan documents is through the claims administrators for these plans. And, in fact, the statute itself tells us that's not the case. Beneficiaries and participants in whose shoes Inova stands are directed to obtain those materials. They can do so pre-suit during their investigation from the plan administrators. This hospital made a decision. It's a sophisticated hospital. It made a decision, an economic one, that it did not want to do that kind of pre-suit investigation. And we have the benefit of knowing that because the case proceeded all the way to the close of discovery. And what Inova told us in discovery was that, in fact, despite the allegations in the Second Amendment complaint that it was stymied, it really didn't do a pre-suit investigation. It admitted in interrogatories that it never requested any plan information from patients. It admitted that it never sought that information from the plan administrators from whom the ERISA plans direct them to go to get those documents. And, in fact, contrary to their allegations that they were stymied, they only purported to have requested plan documents in 23 instances out of the 863 claims. And those 23 instances were in the record and before the district court on its motion for reconsideration, and we would respectfully submit. They're not even consistent with what ERISA tells us you need to do to request plan documents from a plan administrator. But what's wrong with what Judge Weiner said? You said his question wasn't right. All you've said is they could have gotten it from somewhere else. But his question was you didn't produce, at the time your client hadn't produced it, and at the same time you're asking the court to dismiss because that information is not there. This question is accurate. You just are saying there's another source from which they could have gotten it. One could make that allegation in every case that they would like some discovery before they have to meet their pleading allegations. We believe the district court was correct in holding that you don't get to state it. Let's go back to the central tenet here, which is can you plead as a provider? And this is an issue that district courts, as the 28 J letters in the briefing show, are grappling with every day, and there are pending cases right now that involve thousands of claims, not just hundreds, ultimately claims the majority of which, under ERISA, are going to have to be resolved by district courts on an admin record review. And what the court here held was that you don't get past the plausibility standard of Iqbal by simply saying on information and belief that under industry practice, because some other plans and some other contracts out there might have required UCR reimbursement, that we should just assume that these do as well. And that's not all that was before the district court. It isn't as just as if the district court relied solely on the absence of any factual content in the Second Amendment complaint regarding the actual language of any plan. Beyond that, there were various numbers of claims in the exhibits to the Second Amendment complaint asserted against the 16 different defendants. Many defendants put before the district court in connection with their motions to dismiss, where there were only handfuls of patients applicable to them, the actual plans that govern their claims. And those uniformly did not require reimbursement based on UCR. Inova's response to the district court on the motion to dismiss was ignore that. Don't look at it. It's extrinsic evidence. You should credit the information and belief allegation over the actual plan terms applicable to the patients in whose shoes you are purporting to stand in bringing these claims. And the district court rejected that correctly. When the district court has before it information that undercuts the information and belief allegation, it does not have to credit that allegation. And without that allegation. What case says that? Respectfully, there's no Fifth Circuit. You're looking outside the pleading. Well, you're allowed to look outside the pleading. On a 12B, you're undercutting the pleading by saying it's not correct? I think the court is certainly permitted to look outside the pleadings on a breach of contract or an ERISA claim where the whole claim is dependent upon the benefits available under the terms of the plan. But you don't know of a case that says it's okay to say because I can undercut it with something else, I have to not credit it for purposes of the pleading? Your Honor, I know we cited Fifth Circuit authority on that in my brief. I don't have it right in front of me, but I will try to find that. Okay. Why under that logic would Electra Stem not be wrong? Respectfully, Electra Stem is a red herring. Your Honor, I was counsel in that case. I argued before, Your Honor, in it. It is apples and oranges. Electra Stem was a lawsuit involving a claim by a contracted provider in privity with the defendant alleging a breach of a single contract. And all that, and the court, the Fifth Circuit, never reached any issues relating to ERISA because it found that those claims were waived by the. The argument was made, and you know that the argument was made by Blue Cross of Texas, that they couldn't say that the services were covered under the plan because they didn't have the plan. That argument was made to the court, and the court said, no, what's been pled is adequate on that point, and the only part that's not adequate is whether or not it was signed or not. But we, the court held, even in face of an argument, a similar argument in that case, no, we think it's adequately pled even without the plan language. Your Honor, but with respect to the Fifth Circuit's decision in that case, that was in the context of a right of payment issue. The debate at that time was whether or not there was preemption and whether or not the claims raised a right of payment or a right to payment or, sorry, or a right of payment issue implicating preemption. The decision at the end of the day was that ElectroStem had waived any right with respect to the ERISA issues. And so that all that is addressed in the ElectroStem opinion with respect to pleading standards is the fact that this plaintiff, suing on one single contract, met the requirements because it attached that instrument to its complaint, a proposition we don't disagree with. And, in fact, the court considered that contract in connection with resolving that pleading issue. Let me ask. Is the contract that was attached in the ElectroStem complaint, is it the same kind of contract that you're insisting needed to be brought up here? No. It's a different type of contract, Your Honor. Oh. I mean, ElectroStem was providing medical devices, I guess it was, to these various patients and have some complaint about how they were being reimbursed. Is that correct? Correct. And so don't they stand roughly in the same place as Inova and the other hospitals do? No, Your Honor. They have a claim under Blue Crawl, under an ERISA plan or not, and whether it's in-network or out-of-network. Okay. Correct me. What is it, the distinction between ElectroStem's position vis-à-vis ERISA and Inova's? Sure. What was allowed to go forward in ElectroStem was simply a breach of contract claim under Texas law. And it was because they were suing for a violation of a single contract, which was before the court. All of its terms were before the court. There was no question that they had alleged a breach of that instrument. Who was the contract with, between? The contract was between Blue Cross Blue Shield of Texas, which is a doing business as of my client, Healthcare Service Corporation, and ElectroStem, the provider. It was an in-network contract. So all the claims that were allowed to proceed were for violation of that contract. Well, let me ask you this. On remand, Judge Rosenthal, excellent judge, says Blue Cross's argument that the proposed amended complaint does not adequately plead a breach of the provider agreement is well presented. But I am bound by the Fifth Circuit opinion. It seems to me she is saying there is still a whole lot more, maybe in the line of what Judge O'Connor is alleging, claiming it as held was necessary. There is a whole lot more that could have been shown here, but we held that it was not. And you are trying to say that, in fact, no. So what, I don't know if you were still involved in the case on the remand, May of 2017, I think, yes, when she entered this order. So what is it further that she is saying should have been pled to make a legitimate contract, breach of contract argument? And how does that differ from what Judge O'Connor is requiring? I mean, if she wanted more and we said she didn't have to have it, and Judge O'Connor is requiring the same sort of extra, that would be helpful to know. I am still counsel in that case. The issues that Judge Rosenthal is grappling with in the case that continues before her have to do with distinguishing between, and let me just back up, electrostim involved roughly 8,000 plus underlying sets of distinct services. And 20,000 more of it, I wanted to add. 20,000 more, that's correct, Your Honor. And what she is grappling with is applying the Fifth Circuit's ruling on preemption and figuring out which claims may proceed and which cannot, which are preempted because they only raise a coverage issue or a right to payment issue which would be preempted under this Court's guidance. What extra did she want that we said she didn't have to get? I mean, she is saying that I don't think it's well pleaded, and we said that it was. So what more, in your understanding, is she saying should have been in the complaint? I think, looking back, I don't have that opinion in front of me, Your Honor, but there have been a number of issues and successive briefs that were filed following remand. One of the issues she was also grappling with was whether or not specific terms of the provider agreement were, in fact, breached. When they pled their complaint originally, they just alleged with respect to these thousands of claims that they all breached the provider agreement. Now the Fifth Circuit has indicated anything that is a coverage issue or a right to payment issue is preempted. That would only leave those claims where the basis of the alleged breach is a right to payment. In other words, the contracted amount, the fee schedule amount. If the only issue is whether the contract said pay $100 and we, in fact, paid 50, that issue is live following remand. And that's what she was trying to sort through. And in connection with our briefing, we had raised the question of whether or not that court found, Judge Rosenthal found, not at the pleading stage given the Fifth Circuit's decision. Well, let me ask, if we were to agree with your friend on the other side here, what parade of horribles would follow? Your Honor, I think at some level what is confronting district courts right now, this is really an economic issue. And we would suggest an economic issue. Where should the investigation take place? Should a hospital have to follow the statute, and to the extent it wants to investigate whether or not it has a claim, obtain additional plan information from those that assigned the claims to them, or follow the process and request that from a plan administrator, and do some due diligence before filing a suit? Or is it sufficient to make an allegation on information and belief that because in the industry they generally got a higher level of reimbursement, that's good enough? Put thousands or hundreds or thousands of claims into a district court proceeding and then sort it out in discovery. In essence, we contend that's an audit, that's not a lawsuit, and that's not what ICBAL allows. And to shift the burden to allow a provider to put, in this case, 863 claims before the court, and require the defendants to marshal all of that plan language, append it to their motion to dismiss to demonstrate the fallacy of the assertion, we don't think is required, which is why it's important for this Court to look at what information was before Judge O'Connor when he made his decision. On the one hand, he had an allegation solely on information and belief, admittedly. And on the other hand, he had actual plans that refuted the allegation of uniformity of reimbursement based on UCR. Counsel mentioned the Third Amendment complaint in his argument. And I'd like to look at that for a second, because what's critical there is that that very robust pleading that they put before Judge O'Connor, an interesting fact is, let's take my client against whom the vast majority of claims were asserted. None of them cited in the Third Amendment complaint required reimbursement based on UCR, not a one. So the — you know, in this case, this Court has the ability to kind of — Do none of them show any sort of breach of the agreement? Maybe not UCR, but some other reimbursement obligation beyond what your client did? In the Third Amendment complaint? In the Third Amendment complaint, Inhofe sought to plead a completely different case. So rather than what was alleged in the original petition, the First Amendment complaint and the Second Amendment complaint, which was that all of these plans required use of an industry term, UCR, as a benchmark for reimbursement about a network of providers, their argument in the Third Amendment complaint was, well, no, it didn't, but whatever the plan said, none of you followed them. In other words, the Third Amendment complaint does not in any way bolster or support the allegations that were in the Second Amendment complaint or its predecessors, or prove the veracity of the — of the allegation on information and belief. Quite the opposite. It undercuts it. It demonstrates that that allegation was fashioned out of whole cloth without any reasonable investigation. In their briefing below, Inhofe admitted that it basically did no pre-suit investigation. The first time it undertook any effort to determine what these plans actually said was several days before filing the Second Amendment complaint, when it did some Google searches and it sent an attorney in plaintiff's counsel's firm to D.C. to go to the Department of Labor and see if he could find some planned documents. One concern I have about these cases, I'm not sure exactly what the plaintiffs should have known at the time they first brought their suit. We're all learning, including the defendants, as to how this circuit and other circuits are going to require these claims to be brought. And maybe they thought under their best reading of the case law that doing what they did would be sufficient. It became clear that the district judge didn't think so, and at some stage it may become clear if we write clearly what we think. But this is sort of a lessons learned case, and I'm not sure who ought to carry the greater burden of that. Your Honor, we think Iqbal already tells us where the burden lies. And in this instance, admittedly, it's complex and it's complicated because this is not a plaintiff who stands here in their own right, but is purporting to sue on the behalf of others. And is charged and should have the knowledge available. What shouldn't be the case is that if an individual member or participant in an ERISA plan brought their own case, they would be held to this standard, identify a planned term that entitles you to the benefits. But if you aggregate, if you sit back for five years and collect hundreds or thousands of these claims, and you dump them all into one lawsuit, suddenly it's too complicated to meet those pleading standards. And you can shift all of the work, all of the burden to the district court and defendants to sort it out in discovery. We think that's the type of thing that Iqbal already says is not permissible. Plaintiff is assignee of all these patients' claims could have sought through the ERISA process copies of each of the relevant plans. Could they have? If they were an authorized, you know, representative, they could seek that information. How about assignee of the claim? Is that authorized representative? It turns on what is the language of the assignment, Your Honor. I mean, ERISA and the Department of Labor regulations are. Okay. But a sufficiently written assignment would have given, could have given them that right. Correct. A sufficiently written delegation of that authority from their patients would have permitted them to seek that information from plan administrators. Perhaps that's an unsettled law, but the statute is clear where you need to go to get that information and is the designated plan administrator. You don't want to waive anything at the podium? I don't want to waive anything at the podium. I have several more questions, so we're going to give you three more minutes and we're going to give them three more minutes. Okay? Thank you, Judge. So I have, or did you have anything else, Judge Southwood? I wanted to make a prompt or something, but go ahead. Okay. I have one more question about this topic. Can you go over the circuit lay of the land? Which circuits have held either that you do need to plead the plan language or that you do not need to plead the plan language? Go circuit by circuit, please. Your Honor, just again in connection with preparing for this oral argument, I could not find a circuit decision in this context where the claim is being brought by an assignee on behalf of numerous plans. If someone has a contract and it's not an assignee, can you do that one? Well, assuming Texas law applies here, yes. As we cite in our brief. The brief is kind of old compared to the new law that was just applied, so I'm asking. It is, Your Honor, and I don't know of any updated. You don't know what the updated circuit count is? On courts applying state law for breach of contract and what's required? No, I don't. You don't know that. No, I don't, Judge. Okay. Thank you. The next question is we really, you wanted to talk about it and it's our fault you didn't talk about it, is we haven't talked about count 7 at all. Yes, Judge. And why can't you alternatively plead count 7 in your pleading? I think our issue is not with the concept of alternative pleading. The question is what are you seeking through that count? And just yesterday the Fifth Circuit held in the Swenson case, again, that where there is an available remedy in 502A1B, you cannot state an A3 claim. It's not an alternative pleading issue. It is a singular vehicle for recovery of planned benefits. It said you couldn't do it in a, yesterday the Sweeney case said you're not allowed to plead it. Not that it's on summary judgment, but it says you cannot do it in pleading. Is that what you're telling me? Your Honor, I believe it was a pleading case, but I'd have to go back and look. It just came out. I saw it this morning. It says you cannot do it. Okay. Well, we'll let each side do a 28J letter. What's today? In three days on this new case that just came out to tell us what it says. Thank you, Judge. So your issue with count 7 is you believe that, can you articulate again what your argument is? Yes, Judge. Where the relief sought is essentially benefits due, underpaid or unpaid benefits. That relief is available solely through 502A1B. And that's straight from the Verity decision from the Supreme Court. It's not been modified by Amara. This court said it in 2013 in Life Care Management Services. Quote, when a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under 502A1B of ERISA, rather than a claim pursuant to 502A3. Why isn't that just an election of remedies problem? It's not an alternative. It is you cannot, where you're seeking benefits, you don't state a cause of action under A3. But what if it gets bogged down and doesn't work under the plan? You know how sometimes it doesn't work, and so you have this as the backup? If they had made allegations of that nature in the complaint, perhaps it would present a different issue to the court. But that's not what they did. They alleged various breaches of fiduciary duty that all boil down to you didn't pay me the benefits that were due. Either you didn't pay them because you didn't review the claim properly, or you didn't pay them because you didn't give due consideration to our reconsideration request. Okay, I'm sorry. I'm going to have to give you each two more minutes because I still ‑‑ okay, count one is the main claim that we've been talking about the whole time. Count two, why did we not reverse on that? Count two basically does the same thing. It alleges a refusal, quote, to change their arbitrary and capricious reimbursement amounts. So does it rise or fall with count one? Or do we ‑‑ I'm asking ‑‑ Counts two, three, and seven are the ‑‑ I think it goes with seven. So we do whatever we do on seven to two and three. Well, they're stated slightly differently. I mean, they're all violations of A3. I'm not the master of their pleading, Judge. I'm just trying to get through what happens in this case if we have to go back. What case claims go back? What claims don't go back? The rule from Verity and Amara in this court's decision in life care forecloses all of the A3 claims, counts two, three, and seven, as they are pled in the Second Amendment complaint. And four and six have been voluntarily dismissed. Is that correct? That's correct, Your Honor. So two, three, and seven, you think that they're not available. And we believe they waive. We raise that issue. But if we disagree with you on seven, we also disagree with you on two and three? Not necessarily. The allegations aren't identical. I think the rule, if Your Honor finds, if the Court were to find that A3 claims may proceed in tandem with A1, even though they all seek benefits, then two, three, and seven all rise or fall the same way. I think Circuit held to the contrary. Aside from maybe the Sweeney case that we don't know yet. Well, Swenson just dealt with this issue. Swenson, I'm sorry. Swenson just dealt with this issue in a final paragraph. I would say that would direct the Court to its own decision in the life care management case. That's 703 F3rd 835. Has any other circuit, to the extent that our circuit hasn't really addressed this, and just take that as an argument, has any other circuit addressed the two, three, and seven point, the equitable relief point? Your Honor, I don't know sitting here because we believe the Fifth Circuit has addressed it and the Supreme Court as well. And then count eight. Does that go back if anything goes back, its attorney's fees claim, or does it only go back if certain things go back? It's derivative of their ERISA count, A1B for benefits under the statute, and presumably derivative of their breach of contract count. I'm guessing under Texas law, although they're not clear what state's law they're saying. So if one or seven goes back, eight goes back. I think an attorney's claim can possibly survive. Okay. Thank you very much. Thank you, Your Honor. That's helpful. And I'm not foreshadowing. I'm just trying to figure out the lay of the land. Do you agree with that, counsel? On the point of the attorney's fees? Yes. Yes. If any of the counts go back, then the attorney's fees corresponding to those counts go back as well. Do two, three, and seven go together? Yes. And is there any distinction by which one of them would not go if the rest of them go? No. I don't see any. Is seven available? Do you know anything about whether it's available or not under our law or under any other circuit's law? I think Mr. Kavanaugh is correct that one cannot recover planned benefits under counts two, three, or seven. The problem he has, however, is that our assignments are very broad and include assignments of the patient's rights extending beyond planned benefits. So if the patient has any other claim against the plan or the carrier under two, three, or seven, then those have been assigned and those would go back. Those would be like those narrow state law claims that sometimes survive under our little we have those two Houston hospital cases and they unaggregate the shoals between them. Is that what you're talking about? They could be state law based or they could be equitable relief awardable under ERISA other than planned benefits themselves. We don't know yet. That's right, at the pleading stage. Has any other circuit ever said you can or cannot plead for that simultaneously? I'm not aware of any circuit that has said one way or another, quite honestly, Your Honor. A couple of other brief points. There are two records in this case, one bearing on the propriety of dismissal of the second amended complaint and the other bearing on the motion for leave, and with due respect, Mr. Kavanaugh conflates them. The second amended complaint must stand or fall on its allegations and the attachments to it without regard to extrinsic evidence, that standard 12B6 law, and a plaintiff is entitled to be wrong at the 12B6 stage. It turns out we were incorrect as to the contents of most at least of the 300 and some plans that were produced in time for the third amended complaint, but the allegations of the second amended complaint were that the typical plan language called for payment of an allowable amount based on UCR or RNC. It suits Mr. Kavanaugh's purpose to minimize and denigrate the allegations that we made, but you will find on pages 14 to 16 of our brief a laundry list of the allegations that were made, and they go far, far beyond, well, we're in this industry and we know that plans sometimes say this. They're much more extensive than that, as the Court noted in my opening argument. Is it true, though, that your client or you or whoever was supposed to do it didn't really do the discovery until time of the second amended complaint? Well, no. We asked for the discovery very, very early in the litigation, within a few months of filing. Did you do any self-help other than later on when you went to someplace in Washington to look things up? Did you do calling the ERISA plan administrators and request them? We didn't know who theóI'm sorry. You didn't know who they were? We didn't know who they were. Talk to the patients about, say, please provide us with a copy of your plan. We've not been reimbursed. Ordinarily, the patients don't have the plan. Right, but they can request one. Well, if they know who the administrator is, yes, we could haveó They're supposed to know who the administrator is. They get the plan summary that says it. Well, yes, if the typical plaintiff keeps itó You could have gotten it from the patients, couldn't you have? Let's be honest. We could have, at admission, say, no, we won't treat you without seeing a copy of your plan summary. Many of the patients would not have been able to produce that. We could not have contacted their employers under HIPAA without revealing patient-specific information, so we couldn't have gotten it that way. But after treatment, if you weren't getting the proper reimbursements that you believed, you could have sent them a follow-up letter, pay us, we haven't gotten reimbursed, please send us this following documentation so we can verify and blah, blah, blah. Well, we could in theory have done that. The question would have been how efficacious would that have been. Even if we had requested under 502C the information, as Mr. Kavanaugh says we should have, the defendants in this case were taking the position that we were not entitled to it because we were an assinee, and assinees, they said, are not entitled to 502C relief. Judge O'Connor said our assignments are broad enough that they would encompass that, but they were resisting that until he so ruled. They also denied that they were the plan administrators. So if we had sent a letter to Blue Cross Blue Shield saying, please send us patient Sally Smith's plan information, they would have said go away, you're not the administrator, and go away, you're not the patient, you're an assinee. But that would have been good for you. If they would have said go away a million times and it would show all of your many efforts, then they couldn't stand here and say you didn't avail yourself of the efforts. It would have, Your Honor. I think we have the equivalent in their resistance to discovery. In our reply brief we gave you a timeline that showed the various excuses that they used to resist discovery. Objections because their 12B6 motions hadn't been ruled on were the main ones. Then in the interim between the dismissal of the second amended complaint, excuse me, the first amended complaint and the repleting, they said, well, you have no claims on file, because your first amended has been dismissed and you haven't filed your second amended yet, so we're not going to respond to discovery. They granted themselves protective orders, if you will, from discovery. I want to spend just a minute or two on the denial of the motion for leave to amend. That is, of course, an abuse of discretion standard, which is a high hill to climb. We frankly admit that. But if you look at Judge O'Connor's opinion on that subject, what he essentially has done is to conflate the four different standards that go to the denial of leave to amend into one, and that is what I call a fruit of the poisonous discovery tree standard, if you will, that a plaintiff cannot take advantage of discovery that was obtained before he has met the Iqbal standard in his pleading. And we submit that that turns Iqbal inside out. It's one thing, Iqbal says, inadequate specificity is not excused by the need to conduct discovery. But nothing in Iqbal says that adequate specificity is tainted because it comes from discovery. It really didn't matter how it came to be that we had this specific information, what Mr. Kavanaugh calls robust information, in the third amended complaint. The fact was we had it. And the fact was that it would not have produced prejudice to the defendants. The prejudice Judge O'Connor identified was the prejudice in having to deal with allegations that came from discovery that you never should have had. I submit that that is not a legitimate source of prejudice. As far as a continuance curing it, a continuance would have been necessary in any event. We were set for trial in December, and the dismissal was not until July, by which time no nonwritten discovery had been conducted. The case was not. Can the abuse of discretion also factor in that you were not any longer operating under Rule 15, though your briefing seems to insist on that. It was Rule 16. You were passed the scheduling order deadlines. And so it's a much harsher standard. It's probably not the right combination of words, but a much more difficult standard. More stringent standard, yes, Your Honor. First of all, as to the briefing, if I had it to do over again, I'd do it a little differently. We did, however, cite at least one Rule 16 case in our briefs. The S&W Enterprises standard on which the district court relied is a Rule 16 case and identifies four factors, which Judge O'Connor goes through in his opinion. If you analyze the opinion, however, what he's essentially saying with respect to each and every one of them is this taint that the discovery has produced on the third amended complaint, and that taint cannot be, is prejudicial to the defendant, and it cannot be washed away by a continuance. If you remove that premise that it is illegitimate to having discovery, use that discovery to plead, then I think Judge O'Connor's opinion collapses into itself on the denial of leave. But it does – do we even have to rule on that if we rule on the other? Absolutely not. That's an alternative. And when he's referring to negligent misrepresentation, Count 7, that's a typo or something in the order? It must be because – Because it's a Count 6, right? The ones that were not – that were denied. And I guess they were dismissed because voluntarily, so that you'd have an appeal ready to go. It wouldn't be an allocutory at that point. That was one of the motivations, but yes. Negligent misrep is Count 6, so if Judge O'Connor identified it as Count 7, that was a clear error. That's correct. Four and six were voluntarily dismissed. Your time is up, so – Thank you, Your Honor.